CUMBERLAND FARMS NORTHERN, INC.

*vs.*

MAINE MILK COMMISSION
(2 CASES — #567 AND #571)

Kennebec County.   Opinion, December 18, 1964.

*Berman, Berman, Wernick & Flaherty,*
   by: *Sidney W. Wernick, Esq.,* for Plaintiff.

*John W. Benoit, Asst. Attorney General,* for Defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, SIDDALL, MARDEN, JJ.

RESCRIPT

WEBBER, J. On report. These two cases argued together may be decided in one opinion. As will be noted, the differences between them are insignificant and do not affect the result.

On July 10, 1963 after public hearing the Maine Milk Commission issued certain orders fixing minimum prices for sales of milk in Maine including retail sales. These orders were to become effective on August 1, 1963. The plaintiff was then a licensed retail milk dealer in this state but had not actually engaged in such business in Maine. It had, however, been permitted to participate in the public hearing and deemed itself aggrieved by the orders. It therefore instituted an appeal by filing a complaint in the Superior Court claiming such appeal. The third paragraph thereof stated:

> "3. This appeal is taken by the plaintiff pursuant to, and in accordance with, the provisions of Secs. 4 and 5 of the 'Maine Milk Commission Law', so-called (Chap. 33, R. S. of Me. 1954, as amended) ; and the provisions of Sec. 13 of Chap. 20-A of R. S. of Me. 1954, as amended; and the provisions of Rule 80(b) of the Maine Rules of Civil Procedure."

In the sixth paragraph thereof plaintiff alleged in part that its "business as a seller of milk would be seriously interfered with and impaired" as a basis for its claim that it was aggrieved by the orders appealed from.

Also after hearings held by the Commission on December 3 and 4, 1963 the Commission promulgated price fixing orders, to become effective on April 1, 1964. In this case the appellant was admittedly doing business in Maine at the time of the order and in its attempted appeal by amended complaint reference was made to Rule 80B rather than to Rule 80(b).

The Commission seasonably filed a motion to dismiss in each case, which are now being submitted for our determination. We turn first to those matters peculiar to case #567 before giving our attention to issues common to both cases.

M. R. C. P. Rule 80 (b) deals with the commencement of proceedings for divorce and annulment. Rule 80B deals with the review of administrative actions and provides in part that "when a statute provides for review by the Superior Court of any action by a * * * commission * * * proceedings for such review shall be instituted by filing a complaint with the court. The complaint shall include a concise statement of the grounds upon which the plaintiff contends he is entitled to relief, and shall demand the relief to which he believes himself entitled. No responsive pleading need be filed unless required by statute or by order of the court." It should be noted that the appeal is provided by statute. The rule merely provides the mechanics for claiming the statutory review. It is apparent here that the reference to "80 (b)" was a typographical error and that the intended reference was to "80B". Since no reference to the rule was required, the error has no effect whatever on the appeal if it is otherwise sufficient.

The Commission contends that Cumberland had no standing to appeal since it had not commenced business operations under its license. R. S., Chap. 33, Sec. 4 as amended provides in part that "any person feeling himself aggrieved by any order of the commission issued under the provisions of this chapter may appeal to the superior court as provided in section 5." We hold that when prices are fixed by the Commission which may reasonably tend to affect the very business which the appellant is licensed to do in Maine, even though appellant's operations have not yet begun, he may properly assert that such business "would be impaired" and acquire status as an appellant who reasonably feels himself aggrieved by such orders.

We now turn to issues raised in both cases. The State contends that there is no direct appeal from the Commission to the Superior Court but that the matter must first be reviewed by a Hearing Officer. As noted above, the pro-

visions for appeal contained in Sec. 4 make reference to the appeal method "as provided in section 5." The fourth, fifth and sixth paragraphs of Sec. 5 are the only pertinent portions thereof. The fourth and fifth paragraphs were enacted by P. L., 1961, Chap. 394, Sec. 19, and the sixth paragraph by P. L., 1957, Chap. 384, Sec. 13. These paragraphs now read as follows:

> "The hearing officer as designated in chapter 20-A may, upon proper evidence, decline to grant a license or may suspend or revoke a license already granted upon due notice and after hearing.

> "Violation of this chapter or of any order, rule or regulation made hereunder, or conviction of violating any other law or regulation of the state relating to the production, distribution and sale of milk, shall be sufficient cause to suspend, revoke or withhold such license.

> "Upon revocation or suspension of a license it shall not be reissued until the commission shall determine upon application and hearing that the cause for such revocation or suspension no longer exists, and that the applicant is otherwise qualified."

It must be noted at once that Sec. 5 contains no reference to appeals from rulings of the Commission but deals only with the licensing functions of the Hearing Officer. The explanation for this seeming confusion is readily apparent when the development of the two sections is examined.

R. S., 1954, Chap. 33, Sec. 5 (before amendment) provided:

> "**Sec. 5. Licenses; revoking, suspending and withholding; appeal.**—No dealer as defined in this chapter, shall buy milk from producers or others for sale or shall process, distribute, sell or offer to sell milk in any market in the state designated by the commission unless duly licensed by the commission, provided, however, that no license shall

be required of any person who produces or sells milk for consumption only on the premises of the producer or seller. Each person, before engaging in the business of a dealer in any market designated by the commission, shall make application to the commission for a license hereunder, which the commission is authorized to grant.

"The license year shall commence on January 1 and end December 31 following. Application for a license shall be made on a form prescribed by the commission.

"Licenses required by the provisions of this chapter shall be in addition to any other license required by law.

"The commission may, upon proper evidence, decline to grant a license or may suspend or revoke a license already granted upon due notice and after hearing.

"No order of the commission suspending, revoking or withholding a license, or refusing to renew an existing license shall be effective until 10 days after the same has been issued and a copy thereof mailed to the holder of or applicant for such license. Within said period of 10 days any party believing himself aggrieved by the order of the commission may appeal to the superior court in the county in which he resides or is engaged in business, in term time or vacation, and cause notice of such appeal to be served on the commission. Such court, after hearing, in term time or vacation, shall affirm or reverse the order of the commission, or any modification thereof by the commission.

"No appeal taken from an order of the commission shall suspend the operation of such order, except as herein provided. The justice of the superior court before whom such appeal is pending, when in his opinion justice may so require, may order a suspension of or compliance with such order, or with such order as modified by the com-

mission, pending the determination of such appeal. Violation of the provisions of this chapter or of any order, rule or regulation made hereunder, or conviction of violating any other law or regulation of the state relating to the production, distribution and sale of milk, shall be sufficient cause to suspend, revoke or withhold such license."

Under this section the licensing function was in the Commission with direct appeal to the Superior Court with respect to licensing matters. At the same time Sec. 4 as then written dealt with price fixing by the Commission and provided no appeal whatsoever. In short, appeal rights were limited to review by the Superior Court of Commission action with respect to licensing. There was then no right of appeal from rulings of the Commission establishing prices. Such a right of appeal was first provided in 1957. P. L., 1957, Chap. 384, Sec. 12 stated in part:

"In addition to any penalty otherwise provided by law, the Commission after notice and hearing may prohibit any such practice, and any person feeling himself aggrieved by any order of the Commission issued under the provisions of this chapter may appeal to the Superior Court as provided in section 5."

Reference to Sec. 5 was then meaningful as that section then provided the detailed procedural mechanics of appeal from the Commission to the Superior Court and subsequent disposition thereof.

By P. L., 1961, Chap. 394 the Legislature enacted a new Chapter 20-A, the "Administrative Code" and established the office of "Hearing Officer." The Maine Milk Commission was included as an "Agency" covered by the Code. An examination of this Act, its broad general purposes and the specific amendments of laws relating to the several Agencies contained therein, makes it apparent that the office of "Hearing Officer" was constituted to deal with contested

cases involving the issuance, revocation or suspension of licenses, certificates of registration and the like. The office was not created as an appellate tribunal to review all of the actions taken by the several boards and commissions. More specifically, there is no intimation that the legislature intended to give to the "Hearing Officer" the authority to fix the prices of milk. The Milk Commission is presumed to be a representative body possessed of special competence in this area. Its policy decisions apart from licensing matters are reviewable, we are satisfied, only by the courts, and we find no suggestion that the legislature intended otherwise. Sec. 19 of Chap. 394, specifically amending R. S., Chap. 33, Sec. 5, dealt only with a transfer of authority from the Commission to the Hearing Officer with respect to licenses refused, suspended or revoked. In the process of amendment, however, the provisions for appeal in licensing matters from the Commission to the Superior Court were entirely lifted — and as a result Sec. 5 as now amended no longer contains any machinery for appeal. The words "may appeal to the superior court as provided in section 5" thereupon became meaningless.

We are satisfied that in so amending Sec. 5, the legislature inadvertently failed to note the collateral impact on Sec. 4, and that it had no intention thereby to subject price fixing rulings to the review of the Hearing Officer. We treat the words "as provided in section 5" as repealed by necessary implication so that Sec. 4 as thus amended simply provides that "any person feeling himself aggrieved by any order of the commission issued under the provisions of this chapter may appeal to the superior court." "Such review shall be instituted by filing a complaint with the court." M. R. C. P. Rule 80B (a). This was the method properly employed by the appellant. Although the grounds for relief should be concisely stated, reasonable allowance will be made for the fact that this is a vehicle for appeal and not an original complaint. A responsive pleading thereto

will not ordinarily be required. In an appropriate case a motion to strike might be employed to eliminate verbiage which is unnecessary or improper. In the instant cases the appeal complaints are not vulnerable to motions to dismiss. The entry in each case will be

*Motion to dismiss denied.*
*Case remanded to the Superior*
*Court for further proceedings.*